## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**JULIA GUTIERREZ**
**MARIA GOMEZ**
13407 Dauphine Street
Silver Spring, MD  20906
    *On their behalf and on behalf of three*
    *classes of similarly situated persons*

    **Named Plaintiffs,**

v.

**FIRST NATIONAL BANK OF AMERICA**
241 E Saginaw Hwy.
East Lansing, MI 48823
<u>SERVE ON:</u>
David Imeson, Vice President
241 E Saginaw Hwy.
East Lansing, MI 48823

And

**CENLAR FSB**
7 Graphics Drive
Ewing, NJ  08628
<u>SERVE ON:</u>
Gregory S. Tornquist, CEO
7 Graphics Drive
Ewing, NJ  08628

And

**EQUITY PRIME MORTGAGE LLC**
**F/K/A EQUITY LOANS LLC**
5 Concourse Pky., Queen Building, #2250
Atlanta, GA  30328
<u>SERVE ON:</u>
Incorp Services Inc., Resident Agent
1519 York Road
Lutherville, MD  21093

    **Defendants**

Case No. _____

**CLASS ACTION COMPLAINT**
**&**
**REQUEST FOR JURY TRIAL**

1

Plaintiffs Julia Gutierrez and Maria Gomez ("Ms. Gutierrez", "Ms. Gomez" or "Named Plaintiffs"), through their undersigned counsel files this Class Action Complaint pursuant to MD. RULE 2-231, on their individual behalf and on behalf of three classes of persons against Defendants First National Bank of America ("FNBA"), Cenlar FSB ("Cenlar"), and Equity Prime Mortgage LLC, f/k/a Equity Loans LLC ("Equity Prime") (collectively "Defendants"), and says in support:

## I.    Introduction

1. This case has to do with the omission of any proper and timely notice of the transfer of ownership and mortgage servicing rights of the Named Plaintiffs' and the putative class members' home mortgage loans by FNBA, Cenlar, and Equity Prime.

2. Federal law provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C.A. § 2605(b)(1).

3. Federal law also provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C.A. § 1641(g).

4. In this case, Cenlar ignored its federal duty and never informed the Named Plaintiffs and Cenlar RESPA Class members that it was no longer the mortgage servicer their loan as required by 12 U.S.C.A. § 2605(b)(1).  Instead, in the case of the Named Plaintiffs, Cenlar reported to them that their loan was paid in full and satisfied and also caused a satisfaction to be recorded in the land records.

5.  In this case, Equity Prime ignored its federal duty and never notified the Named Plaintiffs and Equity Prime RESPA Class members in writing that it acquired the mortgage servicing rights from another as required by 12 U.S.C.A. § 2605(b)(1).

6.  The Real Estate Settlement Procedures Act was enacted for "the purpose...to effect certain changes in the settlement process for residential real estate that will result...in significant reform and modernization of local recordkeeping of land title information." 12 U.S.C.A. § 2601.

7.  The Federal Truth in Lending Act ("TILA") was passed with the specific congressional finding:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C.A. § 1601.

8.  More specifically, Congress passed the "Boxer Amendment" to the Helping Families Save Their Homes Act of 2009, 15 U.S.C. 1641(g), requiring such disclosures under the Truth in Lending Act when mortgages are transferred.   The purpose of this new requirement was explained as follows by the sponsor: "Mr. President, I say thank you, particularly to Chairman *Dodd* but also to Senator *Shelby*, with whom I have discussed this amendment. It is very simple. It just says that if you have a mortgage on your home, you ought to know who holds that mortgage note. We say that if your mortgage is sold to

someone else, the new party has to let you know who they are and how they can be contacted. This is very important. We have read stories where people cannot find out who holds their mortgage. Frankly, if you are in trouble and you want to renegotiate your mortgage, you need to sit down with the company that holds your note. That is all we do in this amendment." Statement of Senator Barbara Boxer, Congr. Rec. S5173 (May 06, 2009).

9.   By failing to timely convey the information required by federal law to the named Plaintiffs and the putative class members, The Defendants caused informational injuries which Congress found to be relevant and material under TILA and RESPA.  In addition, the Defendants' failure to convey the necessary information created uncertainty and fear in each of the Named Plaintiffs and the putative class members denied the information required by Congress to be necessary in the mortgage servicing arena and were vital to the successful achievement of RESPA's and TILA's goals and are the ones most critical for consumers, without which consumers suffer the most significant harm or risk of harm. Congress could not have given a clearer indication of its determination that this informational injury creates a material case or controversy by permitting parties like the Named Plaintiffs and putative class members to recovery statutory damages as a result of the violations subject to this action.

## II.    The Parties

10. Ms. Gutierrez and Ms. Gomez are residents of Silver Spring, Maryland in Montgomery County.  Their loan subject to these proceedings is a consumer loan and relates to their home and property located at 13407 Dauphine Street.  Their loan is also a federally related loan as defined by the criteria in 12 U.S.C.A. § 2602(1).

11. First National Bank of America ("FNBA") is a full service intrastate bank headquartered in East Lansing, Michigan. As of December 31, 2013, FNBA had $618 million in total assets. FNBA is a wholly-owned subsidiary of First National Bancshares (FNB), a $692 million one-bank holding company also located in East Lansing. FNBA acquired the ownership rights of the Named Plaintiffs' mortgage loan and the TILA Class members' mortgage loans subject to this action. As of year-end 2013, the FNBA's loan portfolio totaled $514 million, including $498 million in real estate secured loans. Within the real estate segment, 75 percent was 1-4 family residential, 14 percent was non-farm / non-residential, 6 percent was construction and development, 4 percent was multifamily, and 1 percent was farmland related.

12. Cenlar, FSB ("Cenlar"), from its headquarters in New Jersey, is a nationwide loan servicing provider of federally related mortgage loans as defined by the criteria in 12 U.S.C.A. § 2602(1) including the mortgage loans of the Named Plaintiffs and the RESPA class members' subject to this action. The value of Cenlar's mortgage servicing practices, according to its own admission, represents "billions of dollars." Cenlar is also known as Central Loan Administration and Reporting and Cenlar Agency, Inc.

13. Equity Prime Mortgage, LLC f/k/a Equity Loans LLC ("Equity Prime") does business in the State of Maryland as Equity Prime Mortgage. It is licensed as a Maryland mortgage lender (Lic. No. 18343) by the Office of the Commissioner of Financial Regulation. Equity Prime originates mortgage loans, including the Named Plaintiffs' loan subject to this action, which qualify as federally related mortgage loans as defined by the criteria in 12 U.S.C.A. § 2602(1).

### III.   Jurisdiction and Venue

14. Declaratory and injunctive relief are available pursuant to Md. Code Ann., §§ 3-401 – 3-415, and Rule 2-231(b)(2).

15. Venue in this Court is proper in that the Defendants transact business within Montgomery County in relation to Montgomery County residents as part of their debt collection/mortgage servicing practices and includes conduct complained of occurred in Montgomery County, Maryland. *See Pac. Mortg. & Inv. Grp., Ltd. v. Horn*, 100 Md. App. 311, 324 (1994)(finding that a person that "regularly provides credit…places mortgage liens on property and buys and sells these mortgage liens has done more than merely transacted business…but has, in fact, carried on a regular business…").

16. This Court has equitable jurisdiction over the claims asserted herein. 9 M.L.E. Equity § 2.

17. This Court has jurisdiction of this matter pursuant to Rule 2-231 in order to facilitate management of multiple similar claims. Maryland law does not permit class actions to be maintained in the District Court of Maryland.

### IV.   Facts Related to Named Plaintiffs & Defendants

18. Ms. Gutierrez and Ms. Gomez refinanced their personal residence located 13407 Dauphine Street in Silver Spring, Maryland, which they own together as tenants in common, with Equity Prime Mortgage LLC f/k/a Equity Loans LLC on or about November 23, 2015. The refinanced loan was and remains, upon information and belief, insured by the FHA.

19. After taking out the refinanced loan, the servicing rights to the loan were transferred to Cenlar on or about January 1, 2016. Ms. Gutierrez and Ms. Gomez made all the required, monthly payments on their mortgage to Cenlar during the time it serviced their loan.

20. For some unknown reason Cenlar reversed Ms. Gutierrez's and Ms. Gomez's November 2016 monthly payment of $1,300.00 on November 7, 2016.

21. About the same time as the reversed payment Ms. Gutierrez's and Ms. Gomez received a knowingly false correspondence dated November 2, 2016 from Cenlar which claimed it acknowledged that their "loan has been paid in full." Not understanding the basis of the representation the Named Plaintiffs soon thereafter contacted Cenlar and spoke to its representatives Nicole and Debora who made similar representations intended for the Named Plaintiffs to rely upon.

22. Cenlar never sent to or provided the Named Plaintiffs any correspondence notifying them that it was no longer going to act as their mortgage servicer as required by 12 U.S.C.A. § 2605(b)(1).

23. Following the reversal of their November 2016 monthly mortgage payment described *supra*, Named Plaintiffs were directed orally to make the payment to Equity Prime instead which they did on November 16, 2016.

24. Equity Prime never sent to or provided the Named Plaintiffs any correspondence notifying them that it had acquired any servicing rights from Cenlar related to their mortgage loan as required by 12 U.S.C.A. § 2605(b)(1).

25. On November 23, 2016 Cenlar sent to Ms. Gutierrez correspondence which represented the following: "Congratulations on having paid the referenced loan in full." Upon receipt of this correspondence, Named Plaintiffs were understandably confused and fearful of who actually serviced their loan and/or was the owner and what actually was the status of the loan. Plaintiffs fear is reasonable in light of public records in Maryland which reveal that Maryland courts have affirmed foreclosures against homeowners who made no errors

and missed no payments but still lost their home do to the mortgage lender/servicer's errors. *See e.g. Poku v. Friedman*, 403 Md. 47, 939 A.2d 185 (2008).

26. Cenlar acted as the mortgage servicer for Ms. Gutierrez's and Ms. Gomez's mortgage loan until it declared on or about November 23, 2016  and again on November 28, 2016 that the loan was paid and satisfied.  Ms. Gutierrez's and Ms. Gomez did not understand Cenlar's declaration and were not aware that Cenlar had determined the loan to be paid and satisfied and recorded documents in the land records of Montgomery County confirming the same until less than one year from the commencement of this case.

27. Cenlar caused the Certificate of Satisfaction to be recorded in the land records of Montgomery County at Book 53341, Page 53.  No one has ever acted to rescind the recorded Certificate of Satisfaction.

28. On February 3, 2017 and in knowing violation of 15 U.S.C.A. § 1641(g) FNBA wrote to the Named Plaintiffs and informed them for the first time that it had purchased Equity Prime's interest in their loan on December 1, 2016.   FNBA had concealed this information from the Named Plaintiffs until a period of less than one year before the commencement of this action.

29. Even though Cenlar had declared the loan to be "paid in full" and "satisfied" and had also recorded a release of the loan in the land records for Montgomery County, FNBA caused an Assignment of the Deed of Trust which had been previously released and satisfied, to be recorded in the land records for Montgomery County on June 7, 2017.  This document is recorded at Book 54696, Page 241.

30. The botched servicing and mortgage lending practices of the Defendants has caused unnecessary worry and fear of the Named Plaintiffs as well as improper threats of default

by Defendants through their own failures to follow mandatory and safe and sound mortgage servicing practices.

31. All persons, including licensed mortgage lender/servicers in the State of Maryland like the Defendants are expected to know the law.

## V.   Class Allegations

32. This action is properly brought on behalf of a **TILA Class** under Rule 2-231. Named Plaintiffs propose, as the definition of the **TILA Class**, that it be defined as follows:

> Those persons, in the year before the commencement of this action and more than 30 days after the date on which it acquired a residential, mortgage loan, that FNBA did not timely notify in writing that it was their new creditor.

33. This action is also properly brought on behalf of a **Cenlar RESPA Class** under Rule 2-231. Named Plaintiffs propose, as the definition of the **Cenlar RESPA Class**, that it be defined as follows:

> Those persons, in the last three years, for whom Cenlar did not notify in writing the assignment or transfer of the servicing of their residential, mortgage loan from Cenlar to any other person.

34. This action is also properly brought on behalf of the **Equity Prime RESPA Class** under Rule 2-231. Named Plaintiffs propose, as the definition of the **Equity Prime RESPA Class**, that it be defined as follows:

> Those persons, in the last three years, for whom Equity Prime did not notify in writing the assignment or transfer of the servicing of their residential, mortgage loan to Equity Prime from another person.

35. The particular members of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** are capable of being described without difficult managerial or administrative problems.  The Defendants track all information about correspondence

9

sent to borrowers in their electronic system and is able to identify particular categories of borrowers from their electronic systems.

36. The **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members are sufficiently numerous that individual joinder of all members is impractical. This allegation is based on the fact that according to public records, the Defendants have reported to the Office of the Commissioner of Financial Regulation and/or federal regulators that each are the servicer and/or owner for hundreds of mortgage loans throughout the State of Maryland and the United States in the last three years preceding the commencement of this action.

37. There are questions of law and fact common to the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** which predominate over any questions affecting only individual members of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** and, in fact, the wrongs alleged against Defendants by the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members and the remedies sought by **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members against Defendants are identical, the only difference being the exact monetary sum to which each **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** member is entitled to receive from Defendants.

38. The common issues related to the **TILA Class** members include, but are certainly not limited to:

    i.    Whether FNBA timely the **TILA Class** members it was their new creditor;

    ii.    What is FNBA's net worth in order to determine what statutory damages are available to the TILA Class members as provided by 15 U.S.C. § 1640(a)(1)-(2).

39. The common issues related to the **Cenlar RESPA Class** include, but are certainly not limited to:

    i.    Whether Cenlar timely notified in writing members of the **Cenlar RESPA Class** that the servicing of their mortgage loan was transferred or assigned to another.

    ii.    What is the net worth of Cenlar for the purpose of determining statutory damages owed to the **Cenlar RESPA Class** members pursuant to 12 U.S.C.A. § 2605.

40. The common issues related to the **Equity Prime RESPA Class** include, but are certainly not limited to:

    i.    Whether Equity Prime timely notified in writing members of the **Equity Prime RESPA Class** that it had acquired the servicing of their mortgage loan was from another.

    ii.    What is the net worth of Equity Prime for the purpose of determining statutory damages owed to the **Equity Prime RESPA Class** members pursuant to 12 U.S.C.A. § 2605.

41. Named Plaintiffs' legal and equitable claims are typical and the same or identical for each of the member of the **State Law Class** and **TILA Class TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** and will be based on the same legal and factual theories identified *supra*.

42. The Defendants' defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** and will be based on the same legal and factual theories.

43. The Named Plaintiffs will also fairly and adequately represent and protect the interests of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members.

Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Named Plaintiffs do not have any interests which might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class**.

44. Certification of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** under Rule 2-231(b)(2) and (b)(3) is appropriate as to the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of claims by the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

45. The only individual questions concern the identification of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members and who are entitled to any statutory damages owed by the Defendants to the putative class members. This information can be determined by a ministerial examination of the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

46. Plaintiffs' claims are typical of the claims of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members.

47. Plaintiffs will fairly and adequately protect the interests of all **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members in the prosecution of this

action. The Named Plaintiffs are similarly situated with, and has suffered similar injuries as, the members of the **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** they seek to represent. The Named Plaintiffs (i) feel that they has been wronged, (ii) wish to obtain redress of the wrong, and (iii) want Defendants stopped from perpetrating similar wrongs on others since the failure to convey the information deemed material and necessary in the mortgage servicing practices is material to a safe and sound mortgage, secondary market.

48. The **TILA Class, Cenlar RESPA Class, and Equity Prime RESPA Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiffs and described in ¶¶ 18-30 *supra*.

**COUNT I**

**(Individual and Class Claim pursuant to TILA, on behalf of the TILA Class members and the Named Plaintiffs Against FNBA only)**

49. Named Plaintiff incorporates the foregoing allegations.  This claim for federal statutory claims under the TILA is brought by Named Plaintiffs on behalf of the **TILA Class** against FNBA only.

50. Named Plaintiffs' and the **TILA Class** member's mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

51. FNBA is a "creditor" as defined by the Truth in Lending Act (TILA) because it acquired and owned Named Plaintiffs' and the **TILA Class** members' notes and mortgages and changed the terms of those mortgages.

52. FNBA was required not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to [it], to notify the borrower in writing of such transfer. 15 U.S.C.A. § 1641(g). FNBA did not timely notify the **TILA Class** members that it had acquired ownership of their mortgage loans.

53. FNBA was required to accurately and fully disclose the terms of the legal obligations between it and the **TILA Class** members. 12 C.F.R. § 226.17(c).

54. Named Plaintiffs' TILA claim is timely because FNBA, did not disclose that it acquired ownership interest in their loan until a time less than 12 months ago and affirmably concealed the information from the Named Plaintiffs despite its mandatory duty under TILA. As such any limitations should be tolled.

55. Named Plaintiff and the **TILA Class** members have been injured and have suffered informational injuries due to FNBA's violations of the TILA and the damages and losses resulting from the failure of receiving accurate information Congress deemed material and necessary in circumstances like those described herein.

WHEREFORE, Named Plaintiffs and **TILA Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as counsel on behalf of the **TILA Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiffs and the **TILA Class** members for violations of TILA and against FNBA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain in excess of $75,000.00 as related to the statutory damages available to the Named Plaintiffs and the TILA Class members which may be equal to $500,000.00 or 1%

14

of FNBA's net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2);

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1640(a)(3); and

d. Provide such other or further relief as the Court deems appropriate.

## COUNT II

**(Individual and Class Claim pursuant to RESPA, on behalf of the Cenlar
RESPA members and the Named Plaintiffs Against Cenlar only)**

56. Named Plaintiffs incorporate the foregoing allegations. This claim for federal statutory claims under the TILA is brought by Named Plaintiffs on behalf of the **TILA Class** against Cenlar only.

57. The Named Plaintiffs and **Cenlar Class** members are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605.

58. Cenlar is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605.

59. Cenlar had a mandatory duty to notify the **Cenlar RESPA Class** members in writing of any assignment or transfer of the servicing of the Named Plaintiffs' and the Cenlar **RESPA Class** members' loans to any other person within 15 days of the transfer. 12 U.S.C.A. § 2605(b).

60. Cenlar failed to give any written notice or any timely written notice to the Named Plaintiffs or the **Cenlar Class** members of the transfer of their mortgage loans to another as required by 12 U.S.C.A. § 2605(b).

61. Upon information and belief, based upon the experiences of the Named Plaintiffs and the following public facts and allegations, Cenlar has a pattern and practice of

noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Named Plaintiffs and **Cenlar RESPA Class**:

a. The following published complaints against Cenlar in the Consumer Financial Protection Bureau's public complaint database which identify Cenlar's pattern and practice for mortgage servicing issues: (i) Complaint 1790093 (filed 2/17/2016), (ii) Complaint 1912820 (filed 5/5/2016), (iii) Complaint 1780613 (filed 2/10/2016), and (iv) Complaint 1513662 (filed 8/11/2015).

b. The published decisions and judgments in *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2015 WL 5024047 (W.D. Wash. Aug. 25, 2015) and *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2016 WL 337221 (W.D. Wash. Jan. 28, 2016);

c. The published decision in *Eslick v. Cenlar, Cent. Loan Admin. & Reporting*, No. 2:17CV381, 2017 WL 4836541 (E.D. Va. Oct. 3, 2017).

d. The published decision in *Hand v. ABN AMRO Mortg. Grp., Inc.*, No. CV 112-176, 2013 WL 6383128 (S.D. Ga. Dec. 5, 2013).

e. The published decision in *Pichini v. Highlands Residential Mortg., LTD*, No. A-17-CA-00258-SS, 2017 WL 2172324 (W.D. Tex. May 16, 2017).

f. The published decision in *Althaus v. Cenlar Agency, Inc.*, No. CV 17-445 (JRT/DTS), 2017 WL 4536074 (D. Minn. Oct. 10, 2017).

g. The well pled allegations against Cenlar in *Berry v. Ocwen Loan Servicing LLC et al.* (Case No. 2:17-cv-00122-GMB) pending in the United States District Court for the District of Alabama Middle District.

h. The well pled allegations against Cenlar in *Celestine v. Cenlar FSB* (Case No. 8:17-cv-02797-VMC-MAP) pending in the United States District Court for the District of Florida Middle District.

i. The well pled amended allegations against Cenlar in *Keller v. Lakeview Loan Servicing, LLC et al.* (Case No. 1:17-cv-04048).

j. The well pled amended allegations against Equity Prime and Cenlar in *Sampson v. MERS et al.* (Case No. 4:17-cv-00241) in the United States District Court for the Northern District of Texas (commenced 3/20/2017).

WHEREFORE, Named Plaintiffs and **Cenlar RESPA Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as counsel on behalf of the **Cenlar RESPA Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiffs and the **Cenlar RESPA Class** members for violations of RESPA and against Cenlar, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain in excess of $75,000.00 as related to the statutory damages available to the Named Plaintiffs and the **Cenlar RESPA Class** members which may be equal to $500,000.00 or 1% of Cenlar's net worth, as provided by 12 U.S.C.A. § 2605;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to 12 U.S.C.A. § 2605; and

d. Provide such other or further relief as the Court deems appropriate.

## COUNT III

**(Individual and Class Claim pursuant to RESPA, on behalf of the Equity Prime RESPA Class members and the Named Plaintiffs Against Equity Prime only)**

62. Named Plaintiffs incorporate the foregoing allegations. This claim for federal statutory claims under the TILA is brought by Named Plaintiffs on behalf of the **Equity Prime RESPA Class** against Equity Prime only.

63. The Named Plaintiffs and **Equity Prime RESPA Class** members are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605.

64. Equity Prime is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605.

65. Equity Prime had a mandatory duty to notify the **Equity Prime RESPA Class** members in writing of any assignment or transfer of the servicing of the Named Plaintiffs' and Equity **Prime RESPA Class** members' loans to it within 15 days of the transfer. 12 U.S.C.A. § 2605(b).

66. Equity Prime failed to give any written notice or any timely written notice to the Named Plaintiffs or the **Equity Prime RESPA Class** members of the transfer of their mortgage loans to it as required by 12 U.S.C.A. § 2605(b).

67. Upon information and belief, based upon the experiences of the Named Plaintiffs and the following public facts and allegations, **Equity Prime RESPA Class** has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Named Plaintiffs and **Equity Prime RESPA Class:**

a. The following published complaints against Equity Prime in the Consumer Financial Protection Bureau's public complaint database which identify Equity Prime's pattern and practice for mortgage servicing issues: (i) Complaint 2740479 (filed 11/28/2017), (ii) Complaint 2377717 (filed 3/8/2017). In addition the CFPB database also identifies multiple complaints related to alleged violations of RESPA by Equity Prime at the origination of loans: (i) Complaint 2684932 (filed 3/8/2017); (ii) Complaint 2625734 (filed 8/18/2017); and (iii) Complaint 1848396 (filed 3/24/2016).

b. The published complaint against Equity Prime in the matter of *Branch Banking and Trust Company v. Equity Loans, LLC* (Case No. 5:14cv284) in the United States District Court for the Eastern District of North Carolina (filed on 5/20/2014) (where BB&T was forced to sue Equity Prime related to irregularity related to its mortgage servicing and ownership practices).

c. The well pled amended allegations against Equity Prime and Cenlar in *Sampson v. MERS et al.* (Case No. 4:17-cv-00241) in the United States District Court for the Northern District of Texas (commenced 3/20/2017).

d. The cease and desist order issued by the Illinois Secretary of the Department of Financial and Professions Regulation to Equity Prime for unfairly and deceptively in the State of Illinois in its communications with mortgage borrowers. *See In the Matter of: Equity Loans LLC* 1140 Hammond Drive, Suite I-9150 Atlanta, GA 30328, 2010 WL 5384255 (2/5/2010).

e. The settlement entered into by Equity Prime and the Georgia Department of Banking and Finance related to allegations of Equity Prime's violations of the

Georgia Residential Mortgage Act (GRMA) relating to its mortgage lending practices. *See* MORTGAGES—GEORGIA DBF SETTLES MORTGAGE LENDING VIOLATIONS, 2013 WL 5996588 (11/13/2013).

f. The settlement entered into by Equity Prime and the New York State Department of Financial Service related to allegations of Equity Prime's violations of the New York Business Corporation Law related to its mortgage lending practices. *See IN THE MATTER OF Equity Prime Mortgage LLC* B500928 a Licensed Mortgage Banker Pursuant to Article 12-D of the New York Banking Law, 2017 WL 4766492 (6/19/2017).

WHEREFORE, Named Plaintiffs and **Equity Prime RESPA Class** members pray that this Court:

a. Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as counsel on behalf of the **Equity Prime RESPA Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiffs and the **Equity Prime RESPA Class** members for violations of RESPA and against Equity Prime, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain in excess of $75,000.00 as related to the statutory damages available to the Named Plaintiffs and the **Equity Prime RESPA Class** members which may be equal to $500,000.00 or 1% of Equity Prime's net worth, as provided by 12 U.S.C.A. § 2605;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to 12

20

U.S.C.A. § 2605; and

d.  Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,

Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for the Plaintiffs and
Putative Class Members*

21

## DEMAND FOR TRIAL BY JURY

Named Plaintiffs demand a trial by jury on their behalf and on behalf of the putative class members.

Respectfully Submitted,

Phillip Robinson

2017 DEC 19  PM 3: 54

FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

22